**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:26-cv-01580-PAB-MDB

AMY HOPKINS and DENNIS PARKER,

        Plaintiffs,

v.

PERATON, INC., *a Delaware corporation*,[1]

        Defendant.

---

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
VENUE TO THE EASTERN DISTRICT OF VIRGINIA**

---

## I.    INTRODUCTION

This Motion follows Defendant Peraton Inc.'s ("Peraton") June 22, 2026 Motion to Compel Arbitration [ECF No. 25], which sought to compel arbitration of all claims except Plaintiff Amy Hopkins's ("Hopkins") Title VII claim, consistent with the parties' arbitration agreement excluding such claims. As a result, only Hopkins's Title VII claim (Count Seven) remains before federal court, and this Motion addresses venue as to that claim. Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1404 and 1406, Peraton respectfully moves to dismiss this case for improper venue, or, in the alternative, to transfer it to the U.S. District Court for the Eastern District of Virginia, where the relevant events occurred and key witnesses are located.

---

[1] The Complaint inaccurately identifies the corporate entity as "Peraton, Inc." The correct name of the corporate entity is "Peraton Inc." Additionally, the Complaint incorrectly identifies Peraton Inc. as a Delaware corporation. Peraton Inc. is incorporated in the state of Maryland.

Venue in the District of Colorado is also improper under 28 U.S.C. § 1406 because Title VII's special venue provision governs the sole remaining non-arbitrable claim and is not satisfied here. The Court should therefore dismiss the action or, if justice so requires, transfer it to a proper district court. Alternatively, the Court should transfer this action to the Eastern District of Virginia for the convenience of the parties and witnesses.[2]

## II.     CERTIFICATE OF CONFERRAL

While D.C.COLO.LCivR 7.1(b) excepts motions to dismiss from the duty to confer under D.C.COLO.LCivR 7.1(a), undersigned counsel certifies that they conferred with counsel for Plaintiffs regarding this Motion, by email on June 29, 2026.  As of the filing of this Motion, counsel had not responded and so Defendant presumes that this Motion is opposed.

## III.     FACTUAL BACKGROUND

Hopkins's Title VII claim arises from her employment with Peraton and her termination of employment. Peraton is a federal government contractor headquartered in Reston, Virginia, where its senior leadership for the Space and Intelligence Sector is located. [Declaration of Kristen Keffer ("Keffer Decl.") ¶¶ 3-4]. Peraton's headquarters in Reston, Virginia, are located within the Eastern District of Virginia. [Keffer Decl. ¶ 5]. Peraton hired Hopkins on March 20, 2023, as Vice President and General Manager of the National Security Business Unit, which operated within the Space and Intelligence Sector alongside three other business units: Intelligence Mission Solutions, National Programs, and Civil Space. [Keffer Decl. ¶¶ 6-7]. In this role, Hopkins was part of a centralized leadership structure overseen by senior executives based in Virginia. [Keffer Decl. ¶ 8].

---

[2] Hopkins is also free to pursue her Title VII claim in arbitration.

Consistent with that structure, the employment decisions at issue—including the decision to terminate Hopkins's employment—were made by senior leadership located in Virginia. [Keffer Decl. ¶¶ 9, 11]. The Complaint alleges that Acting Sector President Drew Uplinger, and other senior executives and legal personnel, directed the investigation into the Skyfire matter and made or influenced personnel decisions affecting Hopkins. Those decision-makers were based in Virginia, and the investigation and decision-making process they controlled occurred there. [Keffer Decl. ¶¶ 10-11]. The alleged conduct giving rise to Hopkins's claim thus stems from decisions made at the corporate level in Virginia, rather than from actions taken in Colorado.

Hopkins, moreover, has no meaningful connection to Colorado. She alleges that she is a citizen of Delaware [ECF No. 1 at ¶ 4] and resided there during her employment. [Keffer Decl. ¶ 13]. The Complaint further alleges that Hopkins "regularly reported to her designated work location in Virginia," reflecting that her employment relationship was anchored in Virginia. [ECF No. 1 at ¶ 49]. She did not reside in Colorado at any time relevant to this case and did not maintain a primary workplace there. [Keffer Decl. ¶¶ 12-15].

The Complaint's references to Colorado relate primarily to the Skyfire program and Parker's residence. The Skyfire program, however, was only one component of the broader National Security Business Unit for which Hopkins was responsible. [Keffer Decl. ¶ 16]. Although certain aspects of that program were administered in Colorado [Keffer Decl. ¶ 17], the Complaint itself alleges that the investigation into Skyfire and the resulting employment actions were directed by senior leadership and legal personnel. [ECF No. 1 at ¶¶ 32, 35]. Those functions were carried out at the corporate level, in Virginia, rather than through any localized decision-making in Colorado. [Keffer Decl. ¶¶ 10-11, 18].

Similarly, while Parker is alleged to reside in Colorado and to have worked on the Skyfire program, the Complaint does not allege that Parker made or controlled the decisions concerning Hopkins's employment—which makes sense, because Parker worked as Hopkins's direct report (a subordinate), not as a superior with authority to make decisions regarding Hopkins's employment. [Keffer Decl. ¶¶ 23-24]. Instead, the Complaint attributes those decisions to senior leadership and legal personnel operating within Peraton's corporate structure. *See e.g.,* [ECF No. 1 at ¶¶ 32, 35]. Therefore, any involvement Parker may have had relates to his role in the underlying program, not to the employment decisions at issue in Count Seven. [Keffer Decl. ¶ 25].

The individuals involved in the investigation, human resources functions, and corporate decision-making are located in or around Reston, Virginia, and records relating to Hopkins's employment are maintained through Peraton's systems and personnel based there. [Keffer Decl. ¶¶ 11, 20-21]. Hopkins's reporting structure, supervision, and executive responsibilities were likewise tied to Peraton's headquarters and senior leadership in Reston, Virginia. [Keffer Decl. ¶¶ 4, 8, 14]. These facts demonstrate that the center of gravity of this dispute lies in the Eastern District of Virginia—not Colorado.

## IV.    ARGUMENT

### A.    The Court Should Dismiss Hopkins's Title VII Claim for Improper Venue.

A motion to dismiss based on a forum selection clause is typically analyzed as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992). In resolving a Rule 12(b)(3) motion, a court may consider facts outside the complaint and must accept all reasonable inferences and resolve factual disputes in favor of the plaintiff. *Karl W. Schmidt & Assocs., Inc. v. Action*

*Envtl. Sols., LLC*, No. 14-CV-00907-RBJ, 2014 WL 6617095, at *2 (D. Colo. Nov. 21, 2014) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012)). Because venue statutes are designed for the benefit of defendants, the analysis focuses on the defendant's relevant activities giving rise to the claim, rather than the plaintiff's conduct. *Nagim v. Jackson,* No. 10-CV-00328-PAB-KLM, 2010 WL 4318896, at *3 (D. Colo. Aug. 10, 2010), *report and recommendation adopted*, No. 10-CV-00328-PAB-KLM, 2010 WL 4318888 (D. Colo. Oct. 25, 2010) (internal quotation omitted). The plaintiff bears the burden of establishing that venue is proper in the chosen forum and must make a *prima facie* showing of proper venue when faced with a Rule 12(b)(3) motion. *Nagim*, 2010 WL 4318896, at *2. If venue is challenged, and the court finds venue is not proper, "the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). Acting under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Under Title VII—the sole basis for the remaining claim in this case once the other claims are compelled to arbitration[3]—a special venue provision applies. "It has long been settled in this circuit that this [special venue] provision, rather than the general venue statute, governs venue in Title VII actions." *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998) (internal citation omitted). Indeed, by creating a narrower venue provision for Title VII claims,

---

[3] Federal courts retain jurisdiction over nonarbitrable claims and retain discretion to determine how those claims should proceed after other claims are compelled to arbitration. *See, e.g.*, *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998) (acknowledging the district court's discretion to determine whether and how the remaining nonarbitrable claims should proceed in federal court).

5

"Congress intended to limit venue to the judicial districts concerned with the alleged discrimination." *Trujillo v. Total Bus. Sys., Inc.*, 704 F. Supp. 1031, 1032 (D. Colo. 1989). Under Title VII's special venue provision, venue is proper: (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," (3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," (4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has [its] principal office." 42 U.S.C. § 2000e-5(f)(3).

Applying those standards here, none of the statutory bases for venue points to Colorado, and each instead points to the Eastern District of Virginia. First, none of the conduct at issue occurred in Colorado. The Complaint alleges that senior leadership—including Acting Sector President Drew Uplinger and other executives and legal personnel—directed the investigation into the Skyfire matter and made or influenced the decision to terminate Hopkins. Those individuals were based at Peraton's headquarters in Reston, Virginia, and the decision-making process occurred there. [Keffer Decl. ¶¶ 4, 9–11]. The alleged unlawful employment practice—the decision to terminate Hopkins—thus occurred in Virginia, not Colorado.

Second, the relevant employment records are located in Virginia. Hopkins's personnel records are maintained through Peraton's corporate systems and personnel based at its headquarters in Reston, Virginia. [Keffer Decl. ¶ 20]. There is no allegation that such records are maintained in Colorado, and nothing in the Complaint suggests that Colorado bears any connection to the maintenance of those records.

Third, Hopkins did not work in Colorado. During her employment, Hopkins resided in Delaware and performed her duties either remotely from Delaware or in connection with her designated reporting location in Reston, Virginia. [Keffer Decl. ¶¶ 13-14]. She neither resided in nor maintained a workplace in Colorado during her employment with Peraton. [Keffer Decl. ¶¶ 12, 15]. Thus, Hopkins's employment was anchored in Virginia, not Colorado.

Finally, even if venue were not proper under any of the foregoing provisions, Title VII directs that the action may be brought where the defendant has its principal office. See 42 U.S.C. § 2000e-5(f)(3). Peraton's principal office is located in Reston, Virginia. [Keffer Decl. ¶ 3]. Thus, under any of the four prongs of Title VII's special venue provision, the Eastern District of Virginia is the proper venue under 42 U.S.C. § 2000e-5(f)(3). *See, e.g., Trujillo*, 704 F. Supp. at 1032 (granting transfer of Title VII suit to the District of New Mexico where the alleged discrimination occurred in New Mexico, the relevant employment records were maintained in New Mexico, Plaintiff would have worked in New Mexico but for the alleged discrimination, and Defendants are found in New Mexico).

Because this matter is filed in the wrong venue, the Court "***shall*** dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). Accordingly, Peraton requests that the Court dismiss Hopkins's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). Alternatively, if Hopkins is able to articulate a reason justice requires transfer instead of dismissal, Peraton requests that Hopkins's Count Seven be transferred to the Eastern District of Virginia.

**B.      Alternatively, This Action Should Be Transferred to the Eastern District of Virginia Under the 28 U.S.C. § 1404(a) Forum Non Conveniens Analysis.**

Even if the District of Colorado *were* a permissible venue (it is not), this action should nonetheless be transferred to the Eastern District of Virginia—a far more appropriate and sensible forum—pursuant to § 1404(a).

A district court may transfer any civil action to any other district where it could have been brought originally for the "convenience of parties and witnesses," and "in the interest of justice." 28 U.S.C. §1404(a). Congress enacted this provision as a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (internal quotations omitted). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen*, 376 U.S. at 622); *see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). When ruling on such motions, the factors considered by courts within the Tenth Circuit are:

> (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (numbering added) (quoting *Tex. Gulf Sulpher Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)). These factors favor transfer to the Eastern District of Virginia.

**1.    The Court should give little weight to Hopkins's choice of forum.**

Although plaintiffs' choice of forum is normally afforded significant deference, such deference does not apply where, as here, the operative events did not occur in this District and Hopkins is not a resident of this forum.

"Courts . . . accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (internal quotations omitted). Hopkins's choice of forum should not control in this case because none of the substantial acts giving rise to Hopkins's claims in Count Seven occurred in Colorado. *See Bailey v. Union Pacific R.R. Co.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005) (granting transfer because Colorado was not the district where the accident giving rise to plaintiff's claims occurred nor where plaintiff resided) (collecting cases); *Cargill Inc. v. Prudential Ins. Co. of America*, 920 F. Supp. 144, 147 (D. Colo. 1996) (transferring case and giving little deference to plaintiff who chose to file suit in "a district in which a corporate defendant is doing business, but which has no factual connection to the lawsuit").

If Hopkins's Title VII claims included harassment that occurred in Colorado, for example, such a claim might be appropriate in Colorado. But the Title VII claims challenge only her termination and attribute the investigation, and resulting employment decisions, to senior leadership and legal personnel operating at the corporate level.  Those decision-makers were based

9

in Virginia, where the investigation was directed and the termination decision was made. [Keffer Decl. ¶¶ 9-11, 18]. By contrast, the only alleged connection to Colorado is that the Skyfire program—one program within Hopkins's broader business unit—was administered there. [Keffer Decl. ¶¶ 16-17]. But Hopkins did not reside or work in Colorado; she resided in Delaware and "regularly reported to her designated work location in Virginia." [ECF No. 1 at ¶¶ 8, 49; Keffer Decl. ¶¶ 12-13, 15]. The operative events described in the Complaint therefore concern corporate-level decision-making and employment actions centered in Virginia, not Colorado.

Additionally, Hopkins's choice of forum is entitled to "diminished" deference where she does not reside in the forum in which she sues. *Bartile Roofs*, 618 F.3d at 1168 ("The plaintiff's choice of forum receives less deference . . . if the plaintiff does not reside in the district.").[4] Hopkins resides in the state of Delaware. [ECF No. 1 at ¶ 8]. Therefore, little deference should be accorded to Hopkins's choice of forum.

Because the events giving rise to this litigation did not occur in this District and this forum is not where Hopkins resides, this Court should accord little deference to Hopkins's choice of forum.

>
> **2.      The accessibility of necessary third-party witnesses and access to evidence weighs in favor of transfer to the Eastern District of Virginia.**

The second factor, the accessibility of witnesses and proof, heavily weighs in favor of transfer to the Eastern District of Virginia. The Tenth Circuit has held "[t]he convenience of

---

[4] *See Ervin & Assoc.'s, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996) ("Although the plaintiff's choice of forum is generally accorded due deference, where the plaintiff's choice of forum is not his residence, it is given much less weight."); *Spires v. Hosp. Corp. of Am.*, 2006 WL 1642701, at *2 (D. Kan. June 8, 2006) (deference to plaintiff's choice was "largely inapplicable" if they did not reside in forum).

witnesses is the most important factor in deciding a motion under Section 1404(a)." *Bartile Roofs,*
618 F.3d at 1169 (internal quotations omitted). To show inconvenience, the party seeking transfer
must satisfy a three-part "inconvenience test":

> (1) identify the witnesses and their locations; (2) indicate the quality or materiality
> of their testimony; and (3) show that any such witnesses were unwilling to come
> to trial, that deposition testimony would be unsatisfactory, or that the use of
> compulsory process would be necessary.

*Id.* (internal quotations omitted) (citation modified).

In this regard, federal courts have recognized that the Court's ability to subpoena important
third-party witnesses, increased travel expenses, increased travel distances, and the disruption of
work and home schedules, all add to the cost of attendance for witnesses to appear for trial and
weigh in favor of transfer.[5] Additionally, a subpoena can require a witness's attendance only
"within 100 miles of where the person resides, is employed, or regularly transacts business in
person" or "within the state where the person resides, is employed, or regularly transacts business
in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and
would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

Here, the witness considerations likewise point to the Eastern District of Virginia. Count
Seven of the Complaint identifies Drew Uplinger, Parker, and unspecified "male peers" and "male

---

[5] *See Cargill Inc.*, 920 F. Supp. at 147 (finding accessibility of witnesses weighed in favor of transfer because more necessary witnesses resided in Minnesota compared to Colorado); *Bailey*, 364 F. Supp. 2d at 1232 (considering witnesses disruption in work routines if called to testify relevant in transfer analysis); *Logsdon v. BNSF Ry. Co.*, No. 15-CV-00396-CMA-MJW, 2015 WL 3903512, at *4 (D. Colo. June 24, 2015) (granting motion to transfer venue where "important third-party witnesses will be beyond the reach of the subpoena power of this Court, but within the subpoena power of the [transferee court]."); *AB Invs., LLC v. Gelbard*, No. 10-CV-00046-WDM-BNB, 2010 WL 4054101, at *6 (D. Colo. Oct. 14, 2010) (finding where witnesses "may not be subject to compulsory process to ensure their attendance at trial in Colorado, this factor weighs in favor of transfer.").

Vice Presidents and General Managers" as relevant individuals. Of these, Parker is the only person alleged to reside in Colorado, and the Complaint does not allege that he played any role in the decision to terminate Hopkins—because he did not. By contrast, the Complaint attributes the investigation and challenged employment decisions to senior leadership and legal personnel operating at the corporate level, including Uplinger, who is based in Virginia. [Keffer Decl. ¶¶ 9-11, 22]. Those individuals—and any comparable executives—are tied to Peraton's headquarters in Reston, Virginia, where the relevant decisions were made. [Keffer Decl. ¶¶ 4, 9, 11]. As a result, the most material witnesses are concentrated in Virginia and fall within that court's subpoena power,[6] whereas Colorado has, at most, a limited connection through a single witness whose knowledge of the termination decision is indirect. Thus, this factor favors transfer to the Eastern District of Virginia.

### 3.    The costs of making necessary proof weighs in favor of transfer.

The third factor, the costs of making necessary proof, weighs in favor of transfer. In evaluating this factor, Courts consider where a majority of the witnesses are located. *See Cargill Inc.*, 920 F. Supp. at 147 (finding the increase in costs where more necessary witnesses reside in Minnesota compared to Colorado weighed in favor of transfer); *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1099 (D. Colo. 2006) (finding this factor weighed in favor of transfer because more witnesses reside in the transferee district). As discussed above, the Complaint identifies only one Colorado-based individual—Parker—and does not allege that he was involved in the decision to terminate Hopkins—again, because he was not.

---

[6] The Eastern District of Virginia has the ability to compel attendance of witnesses located in or near Reston, Virginia. *See* Declaration of Emily Stevens ("Stevens Decl.") ¶ 3.

By contrast, the Complaint attributes the investigation and challenged employment actions to senior leadership and legal personnel operating at the corporate level, who are based in Virginia. [Keffer Decl. ¶¶ 9-11]. The concentration of relevant witnesses in Virginia [Keffer Decl. ¶ 26], as compared to the limited connection to Colorado, increases the efficiency of presenting proof in that forum. Accordingly, this factor favors transfer to the Eastern District of Virginia.

### 4.     Trial in this district presents obstacles for Peraton.

As to the fifth factor, trial in this District will be more difficult for Peraton, because of the difficulties in obtaining the presence of non-party witnesses who reside over 100 miles away from Denver, Colorado, as explained above. *See Nnaka v. Progressive Mountain Ins. Co.*, No. 10-CV-0731-CVE-PJC, 2011 WL 117246, at *2 (N.D. Okla. Jan. 13, 2011) (finding this factor weighed in favor of transfer because "[t]ransfer of venue would result in improved access to witnesses and other sources of evidence for all parties, and this factor favors transfer."); *Cook v. Atchison, Topeka & Santa Fe Railway Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) ("The court finds the interests of justice are served by transferring the case. . . . Potential problems relating to the attendance of key witnesses at trial will be obviated by a transfer."). Therefore, this factor favors transfer to the Eastern District of Virginia.

### 5.     The congestion of dockets factor favors transfer to the Eastern District of Virginia.

The sixth factor favors transfer to the Eastern District of Virginia, which is "known for its efficiency in litigation." *Laber v. Austin*, No. 23-CV-1025-EFM, 2023 WL 4950993, at *5 (D. Kan. Aug. 3, 2023). Indeed, actions move so quickly to trial or resolution that the Eastern District of Virginia is "known as the rocket docket…." *Id.* at n. 36 (internal citation omitted) (citation modified). The most recent Federal Court Management Statistics report shows the median time

from filing to disposition of civil cases in the Eastern District of Virginia is approximately 5.8 months, compared to 7.5 months in the District of Colorado.[7] The disparity is even more pronounced for cases proceeding to trial: the Eastern District of Virginia reaches trial in a median of 17.4 months, whereas the District of Colorado requires approximately 39.0 months—well over twice as long. Therefore, the sixth factor weighs in favor of transferring the case to the Eastern District of Virginia.

### 6. The fourth, seventh, and eighth factors are neutral.

The enforceability of judgment and conflicts of law factors are each neutral, and does not weigh in favor of either party. Any judgment against Peraton would be enforceable in either location, making the fourth factor neutral. The seventh and eighth factors, the potential of a conflict of laws issue or the interest in having a local court decide issues of local law, is neutral; Hopkins has brought a federal Title VII claim which either district could decide.

### 7. Transfer would make trial easier.

The final factor, "all other considerations of a practical nature that make a trial easy, expeditious[,] and economical," also weighs in favor of a transfer. Practicality favors transferring this case to the Eastern District of Virginia, because that is where the termination decision was made and where Peraton can most easily make its witnesses available. Plus, this case is in its early stages of proceedings, discovery has not yet opened, and there will be little (if any) delay once this case is transferred. *See Westport Ins. Corp. v. Cal. Cas. Mgmt. Co.*, No. 15-7199-CM, 2016 WL 1028004, at *6 (D. Kan. Mar. 14, 2016) (finding this factor weighed in favor of transfer when considering the case was much more tied to the transferee district, the case was within its early

---

[7] *See* Stevens Decl. ¶ 4.

14

stages, and the stay on discovery); *Morrison Constr. Co. v. Blurock Concrete*, LLC, 380 F. Supp. 3d 1155, 1163 (N.D. Okla. Mar. 29, 2019) (finding this factor requires a party to show the transfer would be "more convenient for the parties and witnesses"). This factor favors a transfer because, as explained above, the convenience of the parties and witnesses would improve by transferring the case to the Eastern District of Virginia.

## V.    CONCLUSION

For the foregoing reasons, this case should be dismissed for improper venue, or, in the alternative, transferred to the U.S. District Court for the Eastern District of Virginia, where the relevant events occurred and key witnesses are located, for the convenience of the parties and witnesses, and in the interests of justice.

Respectfully submitted this 2nd day of July, 2026.

*/s/ Emily R. Stevens*

Margaret Parnell Hogan
Emily R. Stevens
LITTLER MENDELSON, P.C.
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Phone: 303.629.6200
Email: mphogan@littler.com
        emstevens@littler.com

*Attorneys for Defendant Peraton Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2026, a true and correct copy of the foregoing

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER**

**VENUE TO THE EASTERN DISTRICT OF VIRGINIA** was filed and served via CM/ECF to

the following:

Ruth I. Major
The Law Offices of Ruth I. Major, P.C.
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Telephone: 312-893-7544
Email: rmajor@major-law.com

*Attorney for Plaintiffs*
*Amy Hopkins and Dennis Parker*


                                                    */s/ Joanna Fox*
                                                    Joanna Fox, Legal Assistant


4926-3116-8951

16